**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

---

| | | |
|---|---|---|
| CALIBER HOME LOANS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: 3:22-cv-02377 |
| | : | |
| | : | |
| UNION HOME MORTGAGE CORP., | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | |
| | : | |

---

## COMPLAINT

Plaintiff, Caliber Home Loans, Inc. ("Caliber"), by and through its undersigned counsel, brings this Complaint against Defendant, Union Home Mortgage Corp. ("Union Home"), for: (i) unfair competition; (ii) tortious interference with existing contracts; (iii) tortious interference with prospective business relations; (iv) aiding and abetting breach of fiduciary duty; (v) civil conspiracy; (vi) misappropriation of trade secrets/confidential information under the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. §1836 et seq. and the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.; and (vii) Business Disparagement, and in support thereof avers as follows:

## NATURE OF THIS ACTION

1.  Caliber is a Dallas County based national mortgage services provider.

2.  Kevin Cario ("Cario") was one of Caliber's Regional Vice Presidents for the Southeast region of the United States. Cario supervised approximately 51 Caliber employees (including 37 producing loan originators), in 18 locations, across Georgia, Alabama, and South

Carolina.

3.   Upon information and belief, Union Home, a direct competitor, conspired with Cario—leveraging his position of trust and confidence at Caliber—to execute an illegal scheme of unfair competition by targeting and raiding Caliber employees, using/misappropriating Caliber's trade secrets, and systematically and tortiously interfering with Caliber's business relations and contracts.

4.   Cario resigned from Caliber on Friday, September 30, 2022 to join Union Home. Virtually all the employees who Cario supervised either resigned that same day, or have since resigned, to join Union Home.

5.   Upon information and belief, in concert with, and with the knowledge, approval, and encouragement of Union Home, Cario solicited—directly or indirectly—the Caliber employees who he supervised who have joined Union Home.

6.   In 2021, Cario supervised more than $400 million in mortgage loan origination volume (almost 1,600 units) for Caliber, which generated over $1.4 million dollars in profits. Union Home wanted to cripple Caliber's retail mortgage business in the Southeast and eliminate competition, in particular Georgia, Alabama, and South Carolina, and to convert that production, revenue, and profits to its own.

7.   To that end, Cario, in concert with and at the direction of Union Home, violated (and continues to violate) his contractual and legal obligations owed to Caliber by soliciting other employees, and is doing so by using Caliber's confidential information and trade secrets. These actions were malicious and done with the intention of crippling Caliber's retail mortgage business in the Southeast.

8.   In turn, in concert with, and with the knowledge, approval, and encouragement

2

of Union Home, the other Caliber employees breached their legal obligations to Caliber, including soliciting each other, and misappropriating Caliber's confidential information and trade secrets for the purpose of diverting customers to Union Home.

## THE PARTIES

9.   Caliber is an independent mortgage banker and is incorporated under the laws of the State of Delaware with its headquarters located in Dallas County, Texas.  Caliber is engaged in the business of originating, processing, underwriting, closing, and servicing of mortgage loans nationwide.  Caliber engages in interstate commerce.

10. Caliber employs loan originators across the country to, among other things, sell its residential mortgage services to retail customers (i.e., borrowers).  Caliber has achieved its success in the industry by establishing a strong reputation for providing valuable services to its customers.  Caliber has expended substantial amounts of money, time, and resources to hire and develop employees that would build on and strengthen Caliber's reputation, and to build strong branch offices in key areas across the country.

11. Union Home is a mortgage services firm, with its headquarters located in Strongsville, Ohio.  Upon information and belief, Union Home is licensed as a mortgage lender in the state of Texas and regularly conducts business in the state of Texas, including in Dallas County, Texas. Union Home is incorporated under the laws of State of Ohio and may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

12. Jurisdiction is proper pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367 because Caliber has asserted a claim for statutory misappropriation of trade secrets under the federal

3

158800257.1

Defend Trade Secrets Act of 2016, 18 U.S.C. §1836 et seq., and all other claims are so related to Caliber's trade secrets claim that they form part of the same case or controversy under Article III of the United States Constitution.  This Court also has original jurisdiction over this entire action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Caliber and Union Home and the amount in controversy exceeds $75,000.

13. The Court has personal jurisdiction over all parties to this action.

14. Venue is proper in the United States District Court for the Northern District of Texas because Caliber is a citizen of Texas and resides within this District and Division, Caliber suffered significant harm to its business in the state of Texas, and Union Home regularly conducted business in the state of Texas. A substantial part of the events or omissions giving rise to the claims at issue in this action occurred in this judicial district and/or a substantial part of property that is the subject of the action is situated in this judicial district. Venue is also proper as to each of Caliber and Union Home pursuant to 29 U.S.C. § 1391(c) because Caliber's principal place of business is located in this District and Union Home is subject to personal jurisdiction in this District with respect to this civil action.

## FACTUAL BACKGROUND

15. Caliber maintains six divisions across the United States: Southeast, Mountain West, Pacific Northwest, West/Southwest, Central, and Northeast.

16. Cario was one of Caliber's Regional Vice Presidents for the Southeast, and was responsible for supervising approximately 51 employees (including 37 producing loan originators), across 18 locations (retail locations and desk rentals), in Georgia, Alabama, and South Carolina.  In 2021, Cario supervised more than $400 million in mortgage loan origination volume (almost 1,600 units) for Caliber, which generated $1.4 million dollars of profits.  Cario

resigned from Caliber, without notice, on Friday, September 30, 2022.

17. In his managerial role, Cario's duties included oversight of retail locations, business growth, recruiting loan originators, and managing employees.

18. Among the roles at Caliber:

    a.  Branch Managers and Sales Managers for Caliber are responsible for originating mortgage loans for Caliber and for supervising other managers, loan originators, and support staff.  Their duties include oversight of branch operations, business growth, and recruiting loan originators.

    b.  Loan Consultants (or Loan Officers/Loan Originators) are licensed salespeople who source potential borrowers and work with borrowers directly through the lending process.

    c.  Operations staff (e.g., underwriters, processors, production assistants, closers, office administrators) and production assistants work with the Loan Consultants—and often directly with the borrowers—to prepare loan files for closing.  Operations staff and production assistants are critical in the lending process.

<u>**Cario's Agreements with Caliber**</u>

19. To protect its legitimate business interests and in exchange for valuable consideration, as a condition of and in exchange for the commencement of his employment with Caliber, Cario executed a restrictive covenant agreement in favor of Caliber that prohibits him from: (1) soliciting Caliber employees, and (2) retaining, using, or disclosing Caliber's confidential business information.

158800257.1

20. Specifically, Cario executed a *Confidentiality and Non-Solicitation Agreement for Employees, Staffing Agency Employees and Other Employees of Third Parties* ("Cario Agreement") that states:

> During my affiliation with Caliber and all subsidiaries and affiliated entities and for a period of one year after I am no longer associated with the Company, I agree not to directly, separately or in association with others, interfere with, impair or damage the Company's business by soliciting or encouraging any of the Company's employees with whom my affiliation with Caliber and the Company, or cause others to solicit or encourage any of those employees to discontinue their employment with the Company.

See Cario Agreement, attached hereto as Exhibit "A."

21. The Cario Agreement also includes provisions prohibiting the use, misappropriation, or disclosure of Caliber's Confidential Information, either during his employment or thereafter.  See Exhibit A.

22. In addition, Cario is subject to a *Company Terms and Conditions For Variable Pay Plans* ("Variable Pay Plans Agreement"), which also has a non-solicitation of employees provision:

> **Non-Solicitation:**  In consideration of participating in the Plan, the Participant specifically agrees that during employment and for a period of one year after employment with the Company ends, unless stated otherwise within Participant's agreement, Participant will not, either directly, separately or in association with others, interfere with, impair or damage the Company's business by soliciting or encouraging any of the Company's employees with whom the Participant worked or who were in the same department of the Company, or causing others to solicit or encourage any of those employees to discontinue their employment with the Company.

See Cario Variable Pay Plans Agreement, attached hereto as Exhibit "B."

23. Cario's agreements were and are in full force and effect at all times material, including the present.

158800257.1

24. Cario owed—and still owes—specific contractual duties, duties of loyalty, and/or fiduciary duties to Caliber.

### Caliber Protects its Confidential Information

25. Due to his critical role in the company, in the scope of his employment, Caliber entrusted Cario with extensive access to Caliber's confidential information.

26. Caliber has spent significant time, effort, and money to develop, acquire, maintain, and protect its confidential and proprietary business information, including, *inter alia*, non-public employee information such as performance information, compensation information, customer/pipeline information, production, and profitability; and customer/prospect names and contact information, confidential and proprietary information provided to Caliber by customers during the lending process (as described below) and/or other third parties (the Caliber "Confidential Information").

27. In particular, based on his executive managerial role, Caliber entrusted Cario with extensive access to non-public employee information.

28. In addition, during the lending process, customers provide Caliber with highly sensitive private information, including bank records, credit information, social security numbers, and other financial and personal information.  Customers have an expectation that Caliber will maintain the confidentiality of that information, and Caliber is required by industry laws and regulations to protect that confidentiality.  Maintaining the confidentiality of customer information is critical to maintaining Caliber's goodwill and trust with its customers and reputation within the industry.  When a customer's confidential information is compromised, it significantly harms Caliber's goodwill and trust with its customers and reputation within the industry.

29. Caliber's interest in protecting its Confidential Information is critical in that, among other things:

    a.   Caliber utilizes its "pipeline" and other customer information to service its existing customers and to identify potential customers, referral sources, and other business opportunities nationwide.  The "pipeline" typically includes, among other things, the names, loan numbers (if assigned), loan application details, credit information, and other personal financial information of customers at all stages of the loan origination process, from first contact through funding.  Caliber considers that highly confidential customer information;

    b.   Caliber is required by law to maintain the confidentiality of its customer's private information (e.g., social security numbers, bank account, and other financial information);

    c.   Caliber spends a substantial amount of money and resources to advertise its services and the Confidential Information allows Caliber to identify advertising opportunities; and

    d.   Caliber utilizes its trade secrets in interstate commerce to originate, process, underwrite, close, fund, and service mortgage loans throughout the United States where it is licensed to do business.

30. Caliber takes reasonable steps to protect its Confidential Information, including, among other things:

    a.   Requiring execution of confidentiality and non-solicitation agreements, maintaining policies and procedures for the protection and security of

8

such Confidential Information (e.g., policies regarding the use of Caliber's email system), and limiting access to the Confidential Information (e.g., password protection and restricted access);

b.   Providing training to all employees on protecting the confidentiality of information;

c.   Requiring employees to execute attestations that they have read and understood specific policies governing the protection and security of Confidential Information and employees' responsibilities related thereto; and

d.   Protecting its offices and computer systems with physical security including locks and passwords.

31. Caliber's Confidential Information is among its most valuable assets, provides Caliber with a competitive advantage, would be very valuable to a competitor, and is deserving of trade secret protection under the law.

32.  Caliber has never authorized Cario to retain, use, or disclose Caliber's Confidential Information outside the scope of his employment, or for his own benefit, or for the benefit of a competitor (i.e., Union Home), all of which is prohibited conduct.

33. Caliber's Confidential Information is deserving of trade secret protection.

**Union Home, in Concert with Cario, Orchestrated a Plan for**
**the *En Masse* Hiring of Caliber Employees Through the Misappropriation**
**and Use of Caliber's Confidential Information**

34. As a senior leader and manager at Caliber, Cario had—and has—significant influence over Caliber's loan officers and/or operations personnel.

35. Cario supervised approximately 51 Caliber employees (including 37 producing

158800257.1

loan originators) and, in 2021, more than $400 million in mortgage loan origination for Caliber, which generated over $1.4 million in profits.

36. Union Home—a direct competitor—knew that successfully inducing a senior executive (like Cario) to accept employment with Union Home would be an effective mechanism in using him to efficiently solicit additional groups of Caliber loan originators and other employees that Union Home could not otherwise easily recruit.

37. Because confidentiality and employee non-solicitation agreements are typical in the industry, upon information and belief, Union Home knew, or should have known, about Cario's contractual obligations owed to Caliber.

38. Upon information and belief, based on his knowledge of Caliber's employees and its Confidential Information (e.g., compensation information, employee performance information, special skills, production, customer pipeline information), using that information to his advantage, Cario has been directly or indirectly soliciting Caliber employees on behalf of, and at the direction of, Union Home.

39. Upon information and belief, Cario had been working in concert with his supervisor Lee Cove ("Cove"), the Divisional Vice President for the Southeast, to orchestrate an *en masse* departure of Caliber employees in the Southeast to move to another competitor. Cario, however, ultimately separated from Cove and instead targeted the employees he supervised directly to join him at Union Home.

40. Upon information and belief, Union Home offered—and Cario accepted— significant inducements for him to violate his legal obligations and solicit the employees he supervised to join Union Home instead of another competitor.

41. For example, upon information and belief, Cario organized and hosted a group

10

meeting at his home where he solicited Caliber employees on behalf of Union Home, including providing hand-out materials to the employees regarding their potential employment at Union Home.

42. Upon information and belief, Cario hosted other similar meetings and travelled to the offices he supervised to meet with employees, all for the purposes of soliciting them to leave Caliber and join him at Union Home.  Upon information and belief, Cario conducted his activities on Caliber's time (i.e., during working hours) and expense (i.e., travel costs).

43. In addition, upon information and belief, as part of his improper solicitations, Cario made false and disparaging statements about the status and future of Caliber's business. In particular, Cario made statements to the employees he solicited to the effect that Caliber would be closing its retail operations in the Southeast (and perhaps beyond) and that the employees would no longer have a job at Caliber after he left.

44. Upon information and belief, Union Home offered—and Cario accepted— significant financial inducements in exchange for violating his obligations and duties to Caliber in soliciting Caliber employees.  Upon information and belief, Union Home also offered similar financial inducements to other Caliber employees to violate their legal obligations.

45. Thus, upon information and belief, Cario, at the direction of, and for the benefit of, Union Home, has violated—and continues to violate—his contractual restrictions and other legal obligations to Caliber, by targeting and soliciting Caliber employees to resign their employment and join them at Union Home.

46. Upon information and belief, the plan had been in development for months.

47. Moreover, the employees who left with Cario to join Union Home, in concert with Cario and Union Home, have violated their legal obligations owed to Caliber.  For

example, upon information and belief, they misappropriated Caliber's Confidential Information, including customer information, and actively solicited and planned with each other (and Cario) to orchestrate the *en masse* departure.

48. Upon information and belief, that Confidential Information is now in Union Home's possession and control, exists on its electronic systems, and is being used for the benefit of Union Home, as well as Cario, who is compensated based on loans closed by those who he supervises.

49. Moreover, upon information and belief, while still employed by Caliber, and at the direction of Union Home and Cario, the now-former Caliber employees had been "stockpiling" loans to divert them to Union Home over the previous weeks and months, including utilizing personal contact information (email and phone) to communicate with customers and collect documents and information.

50. Union Home, rather than seek to acquire Caliber's business operations directly from Caliber for consideration (i.e., by lawful means), acquired Caliber's business operations indirectly, without consideration, through a corporate raid and unfair competition (i.e., by unlawful means).

51. Upon information and belief, Union's Home intention was to cripple Caliber's retail mortgage business in the Southeast (in particular in Georgia, Alabama, and South Carolina) and eliminate competition by unfair methods.

<u>COUNT I</u>

**UNFAIR COMPETITION/RAIDING**

52. Caliber re-alleges and incorporates by reference the above allegations as though fully set forth herein.

158800257.1

53. Upon information and belief, using Caliber's Confidential Information improperly that it obtained from Cario, and by inducing Cario to violate his other contractual and common law legal obligations owed to Caliber, Union Home directly and intentionally conspired to solicit and raid Caliber's employees.

54. Upon information and belief, Union Home knew, or should have known, of Cario's legal obligations owed to Caliber, including the obligation not to solicit Caliber employees.

55. At all times material, Union Home knew or should have known that this unfair and unlawful practice would result in significant injury to Caliber.

56. Union Home took these steps for the purpose of, *inter alia*: (1) causing harm to Caliber; (2) diverting Caliber's employees and customers; (3) destroying Caliber's business operations; and (4) misappropriating/converting Caliber's Confidential Information for its own benefit.

57. In particular, upon information and belief,  Union Home wanted to cripple Caliber's retail mortgage business in the Southeast and eliminate competition (in particular Georgia, Alabama, and South Carolina), and to convert Caliber's production, revenue, and profits to its own.

58. The foregoing conduct constitutes unfair methods of competition.

59. The above-described conduct is the direct and proximate cause of significant harm to Caliber.

WHEREFORE, Caliber respectfully requests judgment in its favor, and against Union Home, as set forth in its Prayer for Relief.

158800257.1

## COUNT II

### TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

60. Caliber re-alleges and incorporates by reference the allegations of the above paragraphs as though fully set forth herein.

61. Caliber had valid, existing contracts with Cario regarding confidentiality and non-solicitation, in the form of the Cario Agreement and the Cario Variable Pay Plans Agreement.

62. Caliber also had valid, existing contracts with its other employees who have joined Union Home.

63. These contracts include restrictions against the employees' unauthorized use or disclosure of Caliber's Confidential Information and against solicitation of Caliber's employees.

64. Because confidentiality and employee non-solicitation agreements are typical in the industry, upon information and belief, Union Home knew, or should have known, about Cario's contractual obligations owed to Caliber.

65. Upon information and belief, Union Home also had knowledge of Caliber's existing contracts with other employees solicited to join Union Home.

66. Upon information and belief, Union Home, without privilege to do so, willfully and intentionally interfered with Cario's agreements by giving inducement, aid, assistance, and encouragement to Cario to breach his confidentiality and non-solicitation obligations.

67. Upon information and belief, Union Home, without privilege to do so, willfully and intentionally interfered with Caliber's other employees who were solicited to join Union Home by giving aid, assistance, and encouragement to breach confidentiality and/or non-solicitation obligations under their respective agreements.

68. Union Home's conduct of interference proximately caused Caliber's injuries, including the breaches of Cario's agreements.

69. Caliber suffered actual damages, including but not limited to the loss of valuable employees and associated goodwill attributable to Caliber's customer and employee relationships.

70. The above-described conduct is the direct and proximate cause of significant harm to Caliber.

WHEREFORE, Caliber respectfully requests judgment in its favor, and against Union Home, as set forth in its Prayer for Relief.

## COUNT III

### TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS

71. Caliber re-alleges and incorporates by reference the allegations of the above paragraphs as though fully set forth herein.

72. Caliber had prospective business relations with its existing and prospective customers, including those in its loan pipeline during Cario's employment or for whom there was a reasonable probability that Caliber would enter into a business relationship in the absence of any unlawful conduct by Union Home.

73. Union Home wanted to harm Caliber's business and to convert those prospective business relationships (and the corresponding production, revenue, and profits) to its own.

74. Union Home, without privilege to do so, knowingly and willfully interfered with, and continues to interfere with, the relationship between Caliber and its prospective business relations by engaging in the tortious or unlawful conduct described in the above paragraphs.

75. Union Home's interference with Caliber's prospective business relations directly

158800257.1

and proximately caused Caliber's injuries, including the loss of customer goodwill and the loan origination and servicing profits for which there is a reasonable expectation Caliber would have enjoyed but for Union Home's unlawful or independently tortious conduct.

76. Union Home, rather than seek to acquire Caliber's business operations directly from Caliber for consideration (i.e., by lawful means), acquired Caliber's business operations indirectly, without consideration, through unlawful means.

77. Caliber suffered actual damages, including but not limited to the loss of its prospective business relations and associated goodwill attributable to Caliber's relationships with its existing and prospective customers.

78. The above-described conduct is the direct and proximate cause of significant harm to Caliber.

WHEREFORE, Caliber respectfully requests judgment in its favor, and against Union Home, as set forth in its Prayer for Relief.

## COUNT IV

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

79. Caliber re-alleges and incorporates by reference the above allegations as though fully set forth herein.

80. As described in the paragraphs above, Cario owed Caliber fiduciary duties during his employment with Caliber by virtue of his agreement, employment, special relationship of confidence, and position of trust with Caliber.

81. Cario's duties included the duty of undivided loyalty and the duty to act with the utmost fidelity, integrity, and honesty at all times, and a duty not to act in concert with any third parties contrary to the interest of Caliber.

16

158800257.1

82. In the scope of his employment, Caliber entrusted Cario with Caliber's Confidential Information and access to its employees, customers, and prospects. The fiduciary duty continues after termination of employment and prohibits disclosure or use of Confidential Information acquired during his employment.

83. Caliber had a legitimate and reasonable expectation that it would receive the benefits of its fiduciary relationships.

84. Caliber had a legitimate expectation that Union Home would not interfere with its fiduciary relationships.

85. Union Home knew that Cario, and others, owed a fiduciary duty to Caliber by virtue of his agreements and position of trust at Caliber.

86. Upon information and belief, Union Home, without privilege to do so, intentionally and purposefully provided Cario with assistance or encouragement to breach his fiduciary duties to Caliber, which included among other misdeeds:

      a.   soliciting Caliber's employees to leave their employment;

      b.   misappropriating Caliber's Confidential Information; and

      c.   concealing his activities and misdeeds from Caliber.

87. Union Home knew its conduct would result in significant injury to Caliber and acted with malice and the intent to injure Caliber.

88. Union Home's inducement, assistance, and encouragement was a substantial factor in causing Cario to breach his fiduciary duties to Caliber.

89. By virtue of the foregoing conduct, Union Home knowingly and willfully violated Caliber's legal rights.

90. The above-described conduct is the direct and proximate cause of significant harm to Caliber, all to the direct gain of Union Home.

158800257.1

WHEREFORE, Caliber respectfully requests judgment in its favor, and against Union Home, as set forth in its Prayer for Relief.

## COUNT V

## CIVIL CONSPIRACY

91. Caliber re-alleges and incorporates by reference the allegations of the above paragraphs as though fully set forth herein.

92. Upon information and belief, Union Home agreed and conspired with others to engage in unlawful trade practices, misappropriate trade secrets, tortiously interfere with Caliber's existing contracts, and business relations, and engage in unfair competition by breaching and assisting others to breach agreements restricting solicitation activities, all to the detriment of Caliber.  The aforementioned conspiracy was furthered by Union Home's unlawful conduct as described herein.

93. The above-described conduct is the direct and proximate cause of significant harm to Caliber.

WHEREFORE, Caliber respectfully requests judgment in its favor, and against Union Home, as set forth in its Prayer for Relief.

## COUNT VI

## MISAPPROPRIATION/CONVERSION OF TRADE SECRETS AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE DEFEND TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836(b)(1)) AND THE TEXAS UNIFORM TRADE SECRETS ACT, TEX. CIV. PRAC. & REM. CODE § 134A.001 ET SEQ.

94. Caliber re-alleges and incorporates by reference the allegations of the above paragraphs as though fully set forth herein.

95. While employed by Caliber, as a senior executive and supervisor, Cario obtained access to Caliber's confidential trade secret information, in particular non-public employee

information such as performance information, compensation information, customer/pipeline information, production, and profitability.

96. Such non-public employee information is critical in building a successful and competitive workforce and goodwill with customers and referral sources, and would be very valuable to a competitor.

97. The trade secret information retained by Cario regarding Caliber's workforce is related to Caliber's mortgage services that are used in or intended for use in interstate commerce.  As stated above, Caliber provides mortgage services throughout the United States (i.e., interstate commerce) and the employee information obtained by Cario relates to a substantial number of these services.

98. Caliber considers this type of information items to be confidential and proprietary, and it has taken reasonable steps to maintain the secrecy of this information.

99. Upon information and belief, Union Home, in concert with Cario, obtained Caliber's trade secrets by improper means and/or under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secrets.

100.    Upon information and belief, Union Home, in concert with Cario, used and/or disclosed Caliber's trade secrets knowing that the trade secrets were acquired by improper means and/or from persons owing a duty to Caliber to maintain the secrecy of or limit the use of the trade secrets.

101.  Upon information and belief, Union Home, in concert with Cario, utilized and is continuing to utilize Caliber's confidential, proprietary, and trade secret information to solicit employees to leave Caliber, and in turn, divert Caliber's business to a competitor.  In doing so, Union Home, in concert with Cario, is maliciously and willfully using misappropriated

confidential, proprietary, and trade secret information to its own advantage in direct competition with Caliber.

102.  Upon information and belief, Union Home directed, participated, and/or benefited from Cario's misappropriation of Caliber's trade secrets.

103.  In addition, the employees working in concert with Union Home and Cario absconded with Confidential Information, including customer information, and that Confidential Information is now in Union Home's possession and control, exists on Union Home's electronic systems, and is being used for the benefit of Union Home.

104.  As a result of Union Home's misappropriation and use of the confidential, proprietary and trade secret information, Union Home has violated the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836(b)(1)) and the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.

105.  The above-described conduct is the direct and proximate cause of significant harm to Caliber.

WHEREFORE, Caliber respectfully requests judgment in its favor, and against Union Home, as set forth in its Prayer for Relief.

## COUNT VII

## BUSINESS DISPARAGEMENT

106.  Caliber re-alleges and incorporates by reference the allegations of the above paragraphs as though fully set forth herein.

107.  Upon information and belief, Cario, without privilege to do so, published injurious falsehoods about Caliber, its business, and that it would not retain certain employees after Cario's resignation, in conjunction with Cario's solicitation efforts undertaken on behalf of

Union Home.

108.  In publishing the injurious falsehoods above, upon information and belief, Cario acted willfully, and with ill will or intent to interfere in the economic interest of Caliber or, in the alternative, with reckless disregard for the truth of the statements.

109.  The statements described above caused special damages to Caliber, including the loss of trade or other dealings, including Caliber's employment relationship with its revenue-producing employees and the respective customer relationships associated with those employees.

110.  Upon information and belief, in publishing the injurious falsehoods described above, Cario acted in the capacity as the agent-in-fact of Union Home with the actual or apparent authority conferred upon Cario to solicit Caliber employees on behalf of Union Home.

111.  Union Home is vicariously liable for the damages caused by the tortious acts of business disparagement by its agent, Cario.

WHEREFORE, Caliber respectfully requests judgment in its favor, and against Union Home, as set forth in its Prayer for Relief.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which it has a right to jury trial pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Caliber Home Loans, Inc., respectfully requests that, due to the ongoing, and clearly unlawful acts, the Court:

(1)  Award compensatory damages in excess of $4,500,000, in an amount to be
     determined;

158800257.1

(2) Award attorney's fees and costs, in an amount to be determined;

(3) Award statutory damages under the Defend Trade Secrets Act, in an amount to

be determined;

(4) Award exemplary damages;

(5) Award pre-judgment interest at the maximum allowable rate; and

Caliber further prays that the Court will award any other remedies the Court deems

appropriate.

Dated: October 21, 2022                          Respectfully submitted,

*/s/ Jason R. Elliott*
Jason R. Elliott
Texas Bar No. 24050558
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, TX  75201-3347
JElliott@perkinscoie.com
docketdal@perkinscoie.com
Tel: (214) 965-7723

Andrew M. Delucia (pending *pro hac vice*)
Pa. Bar No. 91203
Benjamin S. Levine (pending *pro hac vice*)
Pa. Bar No. 319495
Peter M. Nakonechni (pending *pro hac vice*)
Pa. Bar No. 318350
RUBIN, FORTUNATO & HARBISON P.C.
1200 Liberty Ridge Drive, Suite 220
Wayne, PA 19087
Tel: (610) 408-2025
adelucia@rubinfortunato.com
BLevine@rubinfortunato.com
PNakonechni@rubinfortunato.com

**ATTORNEYS FOR PLAINTIFF**
**CALIBER HOME LOANS, INC.**